# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JAVA L. TIVIS,
      Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:12-cv-571
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10), the Commissioner's response in opposition (Doc. 13), and plaintiff's reply memorandum (Doc. 16).

## I. Procedural Background

Plaintiff filed an application for DIB in September of 2008, alleging disability since July 13, 2001[1], due to low back strain and bulging discs in his neck and back. (Tr. 215). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Christopher McNeil. Plaintiff, a medical expert (ME)[2] and a vocational expert (VE) appeared and testified at the ALJ hearing. On January 4, 2011, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1] Plaintiff thereafter amended his alleged disability onset date to August 8, 2006. (Tr. 289).
[2] The ME testified via telephone. (Tr. 35-36).

Prior to filing the DIB application presently under consideration, plaintiff had filed two applications for DIB. He filed the first application in November 2001, which resulted in an unfavorable decision issued by ALJ Larry Temin on July 26, 2004, finding plaintiff could perform a restricted range of sedentary work.[3] (Tr. 77-88). Plaintiff's second application was administratively denied on November 7, 2006. (Tr. 89). Plaintiff did not appeal the administrative denial of that application. ALJ McNeil found there was new evidence that plaintiff's condition had improved during the current period of alleged disability. (Tr. 19).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

---

[3]ALJ Temin made the following RFC finding: plaintiff could lift/carry/push/pull 10 pounds occasionally and five pounds frequently; he could stand/walk two hours in an eight-hour workday and for 30 minutes at a time with the option to sit for two to three minutes; he could sit for eight hours in an eight-hour workday but for no longer than two hours at a time with the option to stand/walk for two to three minutes; he could stoop, kneel, crouch and climb ramps and stairs occasionally; he could not crawl, climb ladders/ropes/scaffolds or perform work requiring the forceful use of his right or left lower extremities; and he could not work at unprotected heights or around dangerous machinery. (Tr. 84).

2

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2009.

3

2. The [plaintiff] did not engage in substantial gainful activity during the period from his amended alleged onset date of August 8, 2006 through his date last insured of December 31, 2009 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the [plaintiff] had the following severe impairment: degenerative disc disease (20 CFR 404.1520(c)).

4. Through the date last insured, the [plaintiff] did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally lift twenty pounds, frequently lift ten pounds and push or pull ten pounds with hand or foot controls. Further, he can sit, stand and/or walk for approximately six hours in an eight-hour workday and cannot more than occasionally climb[] ladders, ropes, or scaffolds. He must only occasionally crawl, and cannot more than frequently climb ramps or stairs, stoop, kneel or crouch. He must avoid concentrated exposure to extreme cold, and must avoid all exposure to unprotected heights and hazardous machinery.

6. Through the date last insured, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[4]

7. The [plaintiff] was born [in] 1970 and was 39 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in

---

[4] Plaintiff's past relevant work was as a custodian and a chemical mixer. (Tr. 25).

significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569(a)).[5]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from July 13, 2001, the alleged onset date, through December 31, 2009, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-27).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

---

[5]Based on the testimony of the VE, the ALJ found plaintiff would be able to perform 431,550 light unskilled jobs, citing as examples of such jobs packer (700 jobs locally and 150,000 jobs nationally); cleaner (400 jobs locally and 120,000 nationally); and general factory worker (450 jobs locally and 160,000 nationally).

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson,* 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff has briefly summarized some of the medical findings and opinions of record in his Statement of Errors. (Doc. 10 at 3-6). The Court will not set forth the medical findings and opinions of record in full but will identify, where applicable, the medical evidence relevant to its decision.

On appeal, plaintiff argues that the ALJ erred by rendering an RFC finding that is not supported by substantial evidence. Plaintiff alleges the ALJ specifically erred because he: (1) failed to accord controlling weight to the opinion of plaintiff's treating physician, Dr. Dennis Humphries, M.D., as to plaintiff's RFC; (2) erroneously determined that plaintiff's condition had improved since the 2004 ALJ decision on plaintiff's prior disability application; (3) erroneously relied on the opinions of the medical expert and other non-treating physicians; and (4) failed to adequately explain his rejection of evidence pertaining to plaintiff's RFC that was favorable to plaintiff.

### 1. The ALJ erred by failing to properly apply the treating physician rule.[6]

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight

---

[6]The Court will consider plaintiff's first and third assignments of error together as they are closely related.

than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded

substantial deference, and if the opinions are uncontradicted, complete deference."). "The

treating physician doctrine is based on the assumption that a medical professional who has dealt

with a claimant and his maladies over a long period of time will have a deeper insight into the

medical condition of the claimant than will a person who has examined a claimant but once, or

who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.

1994).

     "Treating-source opinions must be given 'controlling weight' if two conditions are met:

(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the]

case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20

C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ

declines to give a treating source's opinion controlling weight, the ALJ must balance the factors

set forth in 20 C.F.R. § 404.1527(c)(2)-(6) in determining what weight to give the opinion. *See

Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and

extent of the treatment relationship and the frequency of examination. 20 C.F.R. §

404.1527(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical

specialty of the source, how well-supported by evidence the opinion is, how consistent the

opinion is with the record as a whole, and other factors which tend to support or contradict the

opinion. 20 C.F.R. § 404.1527(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'" *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[7]). Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (citing SSR 96-2p).

Here, plaintiff contends that the ALJ was required to give controlling weight to the opinion of his treating family physician, Dr. Humphries, that plaintiff was limited to a restricted range of sedentary work activity on less than a full-time basis. (Doc. 10 at 8-9). Plaintiff contends that Dr. Humphries' assessments were supported by the objective medical evidence. The Commissioner contends that the ALJ gave "good reasons" for rejecting Dr. Humphries' opinion. (Doc. 13 at 5-10).

In his decision, the ALJ afforded "less weight" to four "opinions" of Dr. Humphries: a questionnaire Dr. Humphries completed after last seeing plaintiff on September 22, 2006 (Tr. 295-97); a questionnaire he completed on October 17, 2008, after last seeing plaintiff that same date (Tr. 407-410); a letter to the Department of Veterans Affairs (VA) dated May 11, 2009[8] (Tr. 450); and a physical RFC assessment completed on December 2, 2010 (Tr. 463-68). (Tr. 24-25).

---

[7] Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012. The provision governing the weight to be afforded a medical opinion which was previously found at § 404.1527(d) is now found at § 404.1527(c).

[8] The Commissioner asserts that although the ALJ identified Dr. Humphries' May 2009 letter as an "opinion," the letter is not a "medical opinion" because there is no discussion about what plaintiff can do despite his impairments. (Doc. 13 at 5, n. 3, citing 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.)). Whether the May 2009 letter, standing alone, constitutes a "medical opinion," is not determinative of the question of whether the ALJ properly applied the treating physician rule as the Commissioner does not dispute that Dr. Humphries issued at least two "medical opinions," including a physical RFC assessment in December 2010. (Doc. 13 at 5).

In the September 2006 assessment, Dr. Humphries stated that he had first seen plaintiff in 1994. He diagnosed plaintiff with low back strain and a herniated cervical disc. He described plaintiff's symptoms as neck pain that radiated into the head, back pain that occurred with walking, and pain caused by bending and stooping. Dr. Humphries described the pertinent findings as a 2005 MRI of the cervical spine that disclosed a skewed disc and a March 2006 MRI of the lumbar spine that showed a herniated disc at L4. Dr. Humphries reported that plaintiff had participated in three physical therapy sessions and he was to see the VA about his back problems, but no surgery was required or contemplated at that time. Dr. Humphries reported that "pain limits activity" and plaintiff was unable to sleep because of pain. (Tr. 297).

In the October 2008 assessment, Dr. Humphries diagnosed plaintiff with a "chronic low back and cervical" impairment. (Tr. 408). He noted symptoms on the right side of the neck and low back symptoms that radiated to the right leg. He reported that plaintiff had been evaluated at the VA, had participated in some physical therapy, and was starting physical therapy at the VA. Dr. Humphries indicated that plaintiff's chart should be reviewed for consultative and diagnostic testing on file. Dr. Humphries reported that plaintiff had undergone four MRIs of the spine in the last year and the results were on file at the VA. He stated that plaintiff was receiving epidurals at the VA for his low back. Dr. Humphries described persistent back pain and reported that plaintiff's constant pain prevented work. He reported that plaintiff could drive a car, perform his personal care, and dress and feed himself, but he "[could not] do heavy lifting," and he could do "no other household chores." (Tr. 409, 410). Dr. Humphries reported that plaintiff got up twice during the night due to back pain. (Id.).

In the May 2009 letter to the VA, Dr. Humphries wrote that plaintiff "has incapacitating

episodes of chronic pain and stiffness which normally lasts [sic] up to six (6) weeks or longer";

he experiences low back pain with "little or no relief"; and since receiving his disability

retirement from the United States Postal Service in July 2001, his condition had worsened, it was

unlikely to improve, and his prognosis was guarded. (Tr. 450).

In the physical RFC assessment he completed on December 2, 2010, Dr. Humphries

indicated he had seen plaintiff two to three times a year since the early 1990s. (Tr. 464-68). He

diagnosed plaintiff with a chronic low back condition, which was unchanged and had not

improved. The symptoms were pain in his back on the right radiating into the right calf, which

was described as a "dull, constant pain." (Tr. 464). Dr. Humphries also reported radicular pain

which was described as a sharp pain aggravated by all activity, and he reported that sitting and

standing for 15 minutes caused pain. As the clinical findings and objective signs, Dr. Humphries

noted that plaintiff favored the right leg and had hyperactive "DTR" [deep tendon reflexes].[9] He

reported that plaintiff had undergone all treatment except surgery. He also reported that the VA

had recommended surgery and plaintiff was considering that option. Dr. Humphries reported

that plaintiff's impairments had lasted or were expected to last 12 months. He assessed that

plaintiff could not walk any city blocks without rest or severe pain; he could sit 15 minutes

before needing to get up; he could stand 15 minutes before needing to sit down or walk around;

he could sit less than 2 hours and stand/walk less than 2 hours; he could rarely lift/carry 10

pounds; he could occasionally look down, turn his head to the right or left, look up, or hold his

head in a static position; and he could rarely twist, stoop, crouch/squat, and climb ladders/stairs.

Dr. Humphries opined that plaintiff's pain was constantly severe enough to interfere with the

---

[9]The remainder of the findings are illegible.

10

attention and concentration needed to perform even simple work tasks and that all of plaintiff's days are "bad days." (Tr. 465, 468). He opined that plaintiff was "currently totally disabled due to [his] back problem." (Tr. 468).

The ALJ determined the October 2008, May 2009 and December 2010 opinions were not supported by the objective medical evidence of record, including Dr. Humphries' treatment records, and they were inconsistent with the "credible portion of the activities of daily living." (Tr. 24). The ALJ found the opinions were inconsistent with medical evidence showing plaintiff's medical condition had improved as of October 2008 to the point where he was able to perform light work activity, and the opinions were deficient in a number of respects as discussed more fully below. The ALJ discounted the September 2006 opinion because Dr. Humphries provided it prior to medical improvement that had occurred in October 2008, and the opinion was inconsistent with the objective medical evidence and physical examinations of record. (Tr. 25).

The medical evidence and the record as a whole do not substantially support the reasons given by the ALJ for discounting Dr. Humphries' opinion on plaintiff's functional limitations. First, the evidence does not support the ALJ's determination that plaintiff's condition medically improved as of October 2008. The ALJ relied on two pieces of evidence parsed from the extensive medical record to find that plaintiff's degenerative disc disease medically improved between the date of the prior July 2004 ALJ decision and October 2008: (1) physical examination findings from August 26, 2008 (Tr. 340-44), and (2) an emergency room report from October 26, 2008 (Tr. 451). (Tr. 24). As explained below, these reports, read as a whole and in conjunction with the remaining evidence of record, do not substantially support a finding of medical improvement.

11

The August 2008 physical examination cited by the ALJ yielded some negative findings, including negative straight leg raise and reverse straight leg raise results, and negative Faber's objective testing results[10]. (Tr. 344). However, it was noted on examination that plaintiff was in discomfort, and the examination disclosed a number of positive findings which the ALJ failed to mention, including decreased cervical and lumbosacral range of motion, tenderness, tautness, and mild paralumbar muscle spasms. (*Id*.). Nor did the ALJ reference the examining physician's diagnosis of "chronic lumbar cervical spondylotic pain with recent non-traumatic *exacerbation*," or the plan to decrease plaintiff's medications due to a lack of benefit. (*Id*.) (emphasis added). When these additional findings are considered, the August 2008 report does not support the ALJ's finding that plaintiff's condition had medically improved.

The October 2008 report on which the ALJ relied to find medical improvement was a one-page report of an emergency room visit for right-sided neck pain. (Tr. 451). The report states that plaintiff denied complaints of significant back pain and symptoms of radicular numbness into his lower extremities; there was no history to suggest radiating pain to his legs and nothing to suggest significant weakness of the lower extremities; plaintiff ambulated without difficulty; and there was no motor or sensory deficit. (Tr. 451). While the report indicates the absence of any back symptoms on that date, the ALJ did not consider the other medical reports and examination findings of record in conjunction with the emergency room report to determine whether plaintiff showed sustained medical improvement over the course of his treatment.

A review of the evidence of record in addition to the August and October 2008 reports

---

[10]In this test, also known as "Patrick's test," the "thigh and knee of the supine patient are flexed, the external malleolus rests on the patella on the opposite leg, and the knee is depressed; production of pain indicates arthritis of the hip." http://medical-dictionary.thefreedictionary.com/patrick's+test (last accessed June 26, 2013).

discloses numerous positive imaging results and findings of progression of plaintiff's

degenerative disc disease as summarized below:

- 10/23/06 lumbar spine x-rays: degenerative change at L5-S1; some disc space narrowing with mild to moderate anterior posterior bony spurring. (Tr. 301)

- 12/26/06 lumbar spine MRI: (1) small focal left foraminal disc protrusion with an annular tear at the L4-L5 level, and (2) mild diffuse disc bulge with central and central right disc herniation at the L5-S1 level with minimal compression of the right S1 nerve root. (Tr. 315-16).

- 2/28/07 cervical spine MRI: (1) mild multilevel spondylosis of the cervical spine more severe at the C3-C4 level where a right central disc protrusion causes mild compression of the right ventral surface of the cord, and (2) inversion of the lordotic curvature of the cervical spine centered at the C3-C4 level. (Tr.313-315).

- 4/18/08 lumbar spine MRI: (1) bilevel degenerative disc disease, most pronounced at L5-S1, moderate to severe decreased disc height and desiccation at L5-S1 followed in severity by L4-L5, with a shallow broad-based protrusion eccentric to the right with annular rent abutting the descending right S1 nerve root. *"When comparison is made with previous written report and images dated 04/05/2006, the dominant finding is again at L5-S1. Progression of degenerative changes at L5-S1 are noted, with additional decrease in disc height since the previous examination."* The descending right S1 nerve root is again abutted." (Tr. 414-15) (emphasis added).

- 6/30/08 lumbosacral spine MRI: *"1. There is minimal retrolisthesis now present at the L5-S1 intervertebral disc space. It was not present on the previous studies. 2. There is narrowing of the L5-S1 intervertebral disc space. 3. Small spurs are still present on L5."* (Tr. 309) (emphasis added).

- 7/22/08 cervical spine MRI: comparison made with 2/28/07 cervical spine MRI - multilevel degenerative disc disease, with the findings most pronounced at the C3/C4 level, where there was a large posterior right central osteophytic disc protrusion; a diffuse disc bulge at C4/C5; a diffuse disc bulge at C5/C6; and a right central protrusion at C6/C7. (Tr. 411-12).

- 11/24/09 lumbar spine MRI : multilevel degenerative spondylosis predominantly involving L4-L5 and L5-S1 level; right central disc protrusion causing impingement on the adjacent right S1 nerve root; fatty marrow changes involving the visualized portion of the sacral spine. (Tr. 469-71).

13

The ALJ did not discuss these objective findings when deciding to accord Dr. Humphries' opinion "less weight." The ALJ selectively parsed the medical records to find evidence of medical improvement instead of performing a proper analysis of the medical evidence under agency regulations and controlling case law. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) (noting ALJ's conclusion was "grounded in a myopic reading of the record combined with a flawed view of mental illness"); *Germany-Johnson v. Commissioner of Social Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (noting the ALJ "was selective in parsing the various medical reports").

In addition, although the ALJ gave "significant weight" to the testimony of the ME, Dr. Laura Rosch, D.O., to the extent her testimony was "consistent with the residual functional capacity found herein" (Tr. 23), the ALJ could not reasonably rely on the ME's testimony to discount Dr. Humphries' opinion. Dr. Rosch verified numerous clinical and diagnostic signs of degenerative disc disease throughout the period of alleged disability. She testified that MRI reports documented degenerative disc disease evidenced by osteophyte formation, nerve root impingement, muscle atrophy, and limitation in motion. (Tr. 45). She testified that plaintiff had a "degenerative disc disease annular tear" in April 2009 which had been documented in December 2006. (Tr. 44). She further testified plaintiff had objective findings consistent with Listing 1.04A[11] and the record would show points in time where he met many of the elements of

---

[11] Listing 1.04A governs disorders of the spine (*e.g.,* herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) and requires "compromise of a nerve root (including the cauda equina) or the spinal cord" with:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

14

the Listing and other times where he did not. (Tr. 51-53). Specifically, she testified plaintiff had a disorder of the spine resulting in compromise of a nerve root; limitation of motion of the spine required by the Listing; atrophy, although the cause was not clear; sensory loss; and some positive straight leg raising results. (Tr. 51-52). She also testified there were reports of an antalgic gait. (Tr. 52).

Dr. Rosch further testified there was evidence that plaintiff's degenerative disc disease had worsened since 2004. She testified that the July 2008 MRIs of the cervical and lumbosacral spine showed moderately severe degenerative disc disease and some worsening in the L5, S1 region since March 2004 to 2005, in the form of more narrowing of the L5, S1 interspace. (Tr. 43, citing Tr. 306-406[12]; Tr. 48-49). When discussing the March 2009 consultative assessment of Dr. Jennifer Bailey, M.D., Dr. Rosch seemed to indicate that plaintiff's disease was continuing to progress by stating: "The MRI reports documenting [sic] continuing evidence of degenerative disc disease with present progressive. . . ." [sic] (Tr. 44). When asked by the ALJ to comment on the opinion of Dr. Leslie Green, M.D., the state agency reviewing physician, that plaintiff's condition had improved since the prior decision such that he could now perform a restricted range of light work, Dr. Rosch responded: "Clearly the record shows he has a severe underlying impairment. Clearly the restrictions that can result in the [sic], debilitating to the point where he can [sic] days he can't function and then clearly the record shows there are days he's going to be able to function." (Tr. 47). She concluded whether his condition had improved to a degree where he could perform light work was a matter of credibility and interpretation of the record.

_____

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04A.
[12] The transcript refers to Exhibit "E3-F," but this is an apparent error. The VA notes are found at Exh. B3-F.

(*Id.*).  Dr. Rosch did not confirm that plaintiff's degenerative disc disease would be expected to worsen over time, but she stated that the results of the lumbar spine MRI dated November 24, 2009, showing multi-level degenerative spondylosis predominantly involving L4-5 and L5-S1, and a right central disc protrusion causing impingement (Tr. 469-71), indicated that plaintiff was still experiencing disc impingement on the nerve root.  (Tr. 53-54).

Dr. Rosch also testified that plaintiff would have "good days" and "bad days" as a result of his chronic conditions and the record showed varying degrees of severity depending on the point in time at which the record was examined.  (Tr. 50).  In response to questioning by plaintiff's counsel, Dr. Rosch clarified that plaintiff's symptoms fluctuated to the extent that he would be unable to perform sedentary work on a sustained basis:

> Q:  [I]n terms of [plaintiff's] ability to work and his RFC . . . do you believe that there would be points in time where he'd be unable to do even sedentary work but there would be points in time where he might be able to do that?
> A:  Yes.
> Q:  So, he wouldn't consistently be able to perform sedentary work, depending on how he's doing.
> A:  Exactly.

(Tr. 53).  Dr. Rosch explained that physicians could disagree on plaintiff's functional ability, with some assessing plaintiff as able to perform only sedentary work and some determining otherwise.  (Tr. 47-48).  Dr. Rosch testified that she would "work towards a sedentary residual functioning on a consistent basis over the prolonged period that he's had the impairment. . . ." (*Id.*).  She explained that although there was evidence of atrophy and muscle loss, plaintiff's issue was one of chronic pain and it was not clear from the record that he was restricted to "less than sedentary function all the time for a 12 month period on a prolonged basis."  (*Id.*).

16

While medical expert testimony consistent with the evidence of record can constitute substantial evidence to support the Commissioner's decision, the ALJ here was not entitled to rely on Dr. Rosch's testimony to find plaintiff's degenerative disc disease had improved and to discount Dr. Humphries' opinion. *See Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 570 (6th Cir. 1989) ("A non-examining physician's opinion may be accepted over that of an examining physician when the non-examining physician clearly states the reasons that his opinions differ from those of the examining physicians."); *Lyons v. Social Security Admin.*, 19 F. App'x 294, 302 (6th Cir. 2001) (citing *Barker*, 40 F.3d at 794-95) (ALJ was entitled to accept non-examining medical advisor's opinion as to the severity of the plaintiff's impairments where, to the extent the medical advisor's conclusions differed from those of the examining psychologist, the medical advisor explained his position by reference to the objective medical and psychological reports in the plaintiff's file, as well as the undisputed facts concerning the plaintiff's prior work and social history). Dr. Rosch's testimony belies the ALJ's finding that plaintiff's condition improved by October 2008 to the extent he would be capable of performing a restricted range of light work. In making this determination, the ALJ disregarded Dr. Rosch's testimony that imaging results from July 2008 showed a worsening in plaintiff's condition and that plaintiff would have "good days" and "bad days" which would preclude him from performing sedentary activity on a sustained basis. In fact, Dr. Rosch testified she would defer to Dr. Humphries' RFC assessment of December 2, 2010, stating specifically that she did not disagree with Dr. Humphries' opinion that plaintiff would constantly have pain severe enough to interfere with the attention and concentration needed to perform simple work tasks, or with the restrictions Dr. Humphries placed on plaintiff's ability to move his neck and to twist, stoop,

17

crouch and climb. (Tr. 55). The ALJ therefore was not entitled to rely on Dr. Rosch's testimony to find plaintiff's degenerative disc disease had improved.

The ALJ's remaining reasons for discounting Dr. Humphries' opinion are not supported by the evidence of record. The ALJ discounted the December 2010 assessment not only because he determined there had been medical improvement, but also because Dr. Humphries wrote "doesn't apply" in response to a number of questions on the questionnaire without providing an explanation. (Tr. 24-25). It is not clear why the ALJ believed Dr. Humphries' opinion that certain questions on the form were inapplicable to plaintiff's situation diminished the validity of the functional restrictions Dr. Humphries found. The standing and walking limitations Dr. Humphries assessed covered most of the matters he found to be inapplicable and rendered them superfluous, *i.e.*, whether plaintiff would need to include periods of walking during the working day, whether he would need a job that permits shifting positions at will, and whether he would sometimes need to take unscheduled breaks. (Tr. 466-67). Thus, it was not reasonable for the ALJ to discount Dr. Humphries' assessment on this basis.

The ALJ also discounted the December 2010 assessment on the grounds the ten-pound lifting restriction imposed by Dr. Humphries was more restrictive than the limitation against heavy lifting he imposed in October 2008, and Dr. Humphries provided no explanation and no evidence to support the restriction. (Tr. 25). In fact, Dr. Humphries diagnosed chronic low back and cervical impairments with right leg radiculitis, and he identified imaging studies and clinical findings in the October 2008 and December 2010 assessments. (Tr. 408-10; 464-68). Dr. Humphries therefore provided supporting findings for the lifting restrictions. Moreover, the ten-pound and heavy lifting restrictions are not necessarily inconsistent, particularly since Dr.

18

Humphries' handwritten restriction against "heavy lifting" is not quantified.[13] Accordingly, it was not reasonable for the ALJ to discount the December 2010 assessment on this ground.

Thus, upon review of the evidence of record, the Court finds the ALJ failed to give "good reasons" supported by substantial evidence for declining to give controlling weight to Dr. Humphries' assessment of plaintiff's functional limitations. The positive imaging results cited above and the ME's testimony that plaintiff's degenerative disc disease worsened since 2004 support Dr. Humphries' opinion that plaintiff could not perform sedentary work on a sustained basis. Yet, when determining whether Dr. Humphries' opinion was entitled to controlling weight, the ALJ made no mention of the imaging findings, including those documenting progression of plaintiff's degenerative disc disease, and the other clinical and laboratory findings of record that supported Dr. Humphries' opinion. Further, the ALJ failed to cite evidence showing that Dr. Humphries' opinion was "inconsistent with the other substantial evidence in [the] case record.'" *See* 20 C.F.R. § 404.1527(c)(2). As the ALJ failed to comply with the treating physician rule in assessing Dr. Humphries' opinion, the ALJ's decision finding the treating physician's opinion was entitled to "less weight" is not supported by substantial evidence.

In light of the Court's determination that the ALJ erred by failing to give "good reasons" for declining to give Dr. Humphries' opinion "controlling weight," the Court need not address whether the ALJ properly weighed the opinions of the non-treating physicians of record in

---

[13]The October 2008 questionnaire requested a narrative description of plaintiff's limitations, to which Dr. Humphries reported "no heavy lifting" among others. (Tr. 409-10). In contrast, the December 2010 questionnaire set forth specific numerical options for the lifting restriction (*e.g.*, less than 10 pounds, 10 pounds, 20 pounds, 50 pounds) and specifically requested an opinion on the frequency with which the patient could lift (*e.g.*, never, rarely, occasionally, frequently).

accordance with the regulatory factors set forth in 20 C.F.R. § 404.1527(c). The Sixth Circuit has made clear that remand is warranted when "the Commissioner has not provided good reasons for the weight given to a treating physician's opinion." *Gayheart*, 710 F.3d at 380 (citing *Cole*, 661 F.3d at 939). If on remand a determination is made that Dr. Humphries' assessment is not entitled to "controlling weight," then the opinions of Dr. Humphries and the non-treating physicians should be re-weighed in accordance with the regulatory factors.

Plaintiff's first assignment of error should be sustained.

### 2. The ALJ's finding of medical improvement is not substantially supported.

Principles of administrative res judicata apply to a decision concerning a claimant's eligibility for social security benefits. *Drummond v. Commissioner of Social Sec.*, 126 F.3d 837, 841 (6th Cir. 1997); AR 98-4(6), 1998 WL 283902 (June 1, 1998). Social security claimants and the Commissioner alike are barred from relitigating issues that have previously been determined. *Drummond*, 126 F.3d at 842. Absent evidence that a claimant's condition has improved, findings issued by an ALJ in a prior disability determination are binding on an ALJ in a subsequent proceeding. *Id.* (citing 20 C.F.R. § 404.905). The Commissioner has recognized the binding effect of findings made in a prior adjudication on subsequent adjudicators:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . . .

AR 98-4(6).

The prior ALJ decision issued on July 26, 2004, assessed plaintiff as capable of

performing a restricted range of sedentary work. (Tr. 77-88). Specifically, the ALJ found

plaintiff could: lift/carry/push/pull 10 pounds occasionally and five pounds frequently; he could

stand/walk two hours in an eight-hour workday and for 30 minutes at a time, and he then must

have the option to sit for two to three minutes; he could sit for eight hours in an eight-hour

workday but for no longer than two hours at a time, and he must then be allowed to stand/walk

for two to three minutes; he could stoop, kneel, crouch and climb ramps and stairs occasionally;

he could not crawl, climb ladders/ropes/scaffolds or perform work requiring the forceful use of

his right or left lower extremities; and he could not work at unprotected heights or around

dangerous machinery. (Tr. 84).

     In deciding the present application, ALJ McNeil found there was new evidence plaintiff's

condition had improved during the period currently under consideration beginning August 8,

2006. (Tr. 19). For the reasons explained in connection with plaintiff's first assignment of error,

substantial evidence does not support the ALJ's finding that medical improvement occurred

following issuance of the prior ALJ decision. To the contrary, the objective medical evidence of

record and the testimony of the medical expert, which the ALJ gave "significant weight,"

indicate that plaintiff's degenerative disc disease has worsened since the date of the prior ALJ

decision. Absent new and material evidence of medical improvement, the ALJ was bound by the

prior RFC finding. Accordingly, plaintiff's second assignment of error should be sustained.

### C. The ALJ did not err by failing to discuss additional evidence.

     Plaintiff contends that meaningful review of the ALJ's decision is impossible because the

ALJ failed to mention significant evidence that supports plaintiff's claim for DIB. First, plaintiff

alleges that the ALJ did not mention testimony by Dr. Rosch indicating that plaintiff could not

perform sedentary work activities on a consistent basis. Second, plaintiff alleges that the ALJ failed to accurately describe EMG evidence that showed nerve damage. (Tr. 441). Third, plaintiff contends that the ALJ did not mention the disability retirement he was awarded by the United States Postal Service in 2001, which plaintiff asserts is inconsistent with a finding that he is able to perform light work in 2011. (Doc. 10 at 12-13).

Plaintiff's allegation that the ALJ did not mention favorable ME testimony is duplicative of plaintiff's first assignment of error and has been addressed above. As to evidence of nerve damage, plaintiff has not shown the ALJ erred by describing the EMG evidence as normal. (Tr. 82). To the contrary, the EMG report identifies the results as normal and indicates only a possibility of nerve root irritability. (Tr. 441). Finally, the ALJ was not bound by a disability determination made by the Postal Service, the VA, or any other governmental agency. *See* 20 C.F.R. § 404.1504 ("A decision by any . . . other governmental agency about whether you are disabled . . . is based on its rules. . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."). Plaintiff's fourth assignment of error should be overruled.

### 2. This matter should be reversed and remanded.

Remand is appropriate if the Commissioner applied an erroneous principle of law or failed to consider certain evidence. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id. See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of

disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. The record does not establish that plaintiff's medical condition improved subsequent to the date of the prior ALJ decision such that the Commissioner is not bound by the previous RFC finding. This matter should therefore be remanded for the ALJ to reassess Dr. Humphries' opinion in accordance with the treating physician rule, and to re-weigh the medical opinions of record and obtain additional medical testimony and vocational evidence as warranted.

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 7/9/2013

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JAVA TIVIS,  
      Plaintiff,

vs.

COMMISSIONER OF  
SOCIAL SECURITY,  
      Defendant.

Case No. 1:12-cv-571  
Barrett, J.  
Litkovitz, M.J.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

24